## MARTIN v. BANK.

### (*Knoxville.* · November 23, 1894.)

1. INNOCENT PURCHASER. *Who is not.*

   The holder of negotiable coupons, who acquires them after maturity as collateral security for a pre-existing debt, takes them subject to all equities available against the party from whom he obtained them. (*Post, pp. 180, 181.*)

   Cases cited and approved: King v. Doolittle, 1 Head, 77; Rhea v. Allison, 3 Head, 176; Ferris v. Tavel, 87 Tenn., 386.

2. BONDS AND BONDHOLDERS. *Priority of satisfaction.*

   Bondholders of a corporation who have presented their matured coupons for payment, and have received payment thereof, and have been led to believe that the coupons were thereby canceled and extinguished, are entitled to priority of satisfaction for their remaining bonds and coupons, equally secured by the same mortgage, over a person who advanced the money to take up such matured coupons, under an agreement with the maker not disclosed or assented to by the bondholders, that the coupons taken up should remain in his hands uncanceled as security for his advances. (*Post, pp. 181-185.*)

   Cases cited and approved: 63 N. Y., 311; 24 Am. & Eng. R. R. Cases, 203; 32 Md., 501; 20 N. Y., 398; 7 N. H., 100; 6 Johns. Ch. R. (N. Y.), 423; 128 U. S., 416; 138 Penn. St., 494.

   Cited and distinguished: 96 U. S., 659.

---

#### FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County. T. M. McCONNELL, Ch.

THOMAS & ELDER for Martin.

PRITCHARD & SIZER for Bank.

McALISTER, J.    The object of this bill is to subject the proceeds of certain trust property to the ratable payment of two first mortgage coupons held by complainants.    It appears that on the twenty-eighth of August, 1890, the Arlington Land & Improvement Co. executed a deed of trust to the Citizens' Bank & Trust Co. of Chattanooga, as trustee, to secure a series of bonds issued by the former and amounting to fifty ($50,000) thousand dollars. Two of these bonds, amounting to ten thousand dollars, with their semi-annual coupons, to which class the coupons in suit belonged, were given priority in the trust deed.    Default having been made in the payment ·of some of the interest coupons, the principal and interest of all the bonds became due and payable as provided in the trust deed.    Thereupon the trustee advertised the property and sold· it for $11,200.    Defendant trustee exhibits a statement showing the disposition made by it of the proceeds of the sale of the trust property, from which it appears that only forty-four dollars and sixty-five cents remained in its hands after paying off the first mortgage bonds with interest from the maturity of the coupons, the expenses of sale and compensation to itself as trustee and to its attorneys.    The coupons in suit were not paid by the trustee.    It appears from the record that one G. Lord, of New

12—10 P

York, was the owner of the entire series of first mortgage bonds and coupons, amounting to $10,000. Complainants held two of the first mortgage coupons, amounting to $324.30, and claimed to be entitled to payment *pro rata* with G. Lord in the proceeds of the trust sale. The trustee bank refused to recognize the demand, and paid over the entire proceeds of sale, less expenses, to Lord. As already stated, the object of this bill is to recover the *pro rata* alleged to be due complainants out of the proceeds of the trust sale.

The Chancellor pronounced a decree in favor of complainants. The Citizens' Bank & Trust Co. appealed and has assigned errors.

The coupons in question became due on August 28, 1892, and were sent by G. Lord's estate to the trustee bank for collection. The land and improvement company had provided no money for their payment, and J. M. Goad, the secretary, treasurer, and general manager of the company, requested Henson, president of the trustee bank, to hold up the coupons until he could get some money from the stockholders with which to pay. Henson replied: "Well; you have spoken of getting some extension on the bonds, and if you are going to get any extension on the bonds, you had better raise the money to pay the interest without delay." Thereupon Goad informed Henson that he would pay the coupons out of his individual means, and hold them against the company as security for advances made

by him.   Henson accepted the money for the trustee bank, and, upon Goad's request, turned over to him the coupons uncanceled.   Complainants, Martin and Smith, charge that two of these coupons were turned over to them by said Goad on February 20, 1893, nearly six months after they matured, in consideration of complainants surrendering a solvent collateral note on Goad & White, and postponing suit on two other notes they held against Goad.

The proof shows that, before agreeing to accept the coupons, complainants, by their counsel, inquired of the cashier of the trustee bank whether the coupons had been paid, and were informed that the books of the defendant bank would not show, but that the books of the Arlington Land and Improvement Company ought to show.   The books of the latter corporation were examined, and did not show payment of the coupons.   Whereupon, complainants accepted them from said Goad.

It appears that, after complainants became the owners of the coupons, and prior to the foreclosure sale, the trustee bank was notified, in writing, that complainants held them, "in order," says the notice, "that the same may be provided for and taken care of in case of your foreclosure of the property."   The trustee bank assumed the position that when Goad advanced his money and took up the coupons, that was a payment so far as the bondholders were concerned.   The insistence of the trustee bank is that, while the coupons may have

been surrendered to Goad without cancellation, it was not with any intention of keeping them alive as against the bondholders. Defendant further insists that, as complainants did not advance any money on the coupons, but took them simply as collateral security on a pre-existing debt, complainants could not have sustained any loss through any statements defendant's cashier may have made. The argument that complainants gave up a valid security at the time they accepted the coupons in controversy finds no anchorage in the record. It affirmatively appears from the testimony of complainants that they surrendered the Goad & White note before Goad ever tendered them the coupons. Moreover, the bill itself shows that complainants were not, in a legal sense, *bona fide* purchasers of these coupons. It avers that Goad was indebted to complainants by certain notes, one maturing February 16, 1893, and the other February 23, 1893, and that on February 20, 1893, in consideration of foregoing, for the time, suit on these notes, and of an extension thereof, complainants acquired these coupons.

The authorities are that one who takes a note, either in payment of, or as a security for, a pre-existing debt, is not a *bona fide* holder. *King* v. *Doolittle*, 1 Head, 77; *Rhea* v. *Allison*, 3 Head, 176; *Ferris* v. *Tavel*, 3 Pickle, 386.

It is clear, therefore, that complainants parted with nothing at the time the coupons were acquired, and they have sustained no damage, assuming the

coupons were of no value whatever. Nor do we find anything in the record upon which an estoppel can be predicated against the bank.

The case therefore turns upon the single inquiry whether, in view of the circumstances surrounding this transaction, Goad himself, the assignor of the coupons, would have been entitled to share ratably with the bondholders in the proceeds of the trust sale. The complainants have no better title to the coupons than that possessed by Goad, since, first, the coupons were past due when they acquired them, and, second, they accepted them as security for a pre-existing debt. We are of the opinion that whatever rights complainants may have in the surplus fund, or against the Arlington Land Company, such rights are subordinate to the rights of the holders of the bonds and the subsequently maturing coupons. The insistence of complainants' counsel is that when Goad, the secretary of the land improvement company, advanced his individual means, and the coupons were delivered to him by the bank uncanceled, the transaction did not amount to a payment of the coupons, but to a purchase of them by Goad, and that the lien on the trust property was preserved. The cases on this subject are somewhat contradictory, and perhaps irreconcilable. We, however, approve the rule as laid down in the following authorities:

Jones, in his work on Corporate Bonds and Mortgages, Sec. 249, says, viz.: "Coupons which bondholders presented for payment, and which they

had reason to believe were . paid by the company, are not entitled to share in the proceeds of sale as against such bondholders, although they were in fact taken up by one who advanced the money under an agreement that they were to be delivered to him uncanceled as security for the advances. The bondholders have a direct interest in having the coupons paid, so as to preserve the value of their security."

Among other cases cited by the author in support of the text, is the case of *Union Trust Co. of New York* v. *The Monticello & Port Jarvis Railroad Co.*, 63 New York, 311. In that case, it appeared that one Smith had made an agreement with· a railroad company to advance the money to pay coupons on the company's bonds when they should become due, holding the coupons for security. In pursuance of the agreement, he went to the plaintiff, where the coupons were payable, and left with it the money to pay the coupons when presented, it agreeing with him to take and deliver them to him uncanceled, that he might hold them as security for the money advanced. It was held that Smith was not entitled to share ratably in the proceeds of the mortgage to secure the bonds and coupons with other bond and coupon holders. As against the railroad company, the person who advanced money for the coupons in this way could enforce the mortgage.

Again, in the American & Eng. Ency. of Law, Vol. IV., page 441, the rule is stated as follows: "As against bondholders who have presented their coupons

for payment, and not for sale, and who had the right to assume they were paid and extinguished, a person who advances the money to take them up, under an undisclosed agreement with the company that the coupons should be delivered to him uncanceled, as security for his advances, is not entitled to equal priority in the lien or the proceeds of the mortgage by which the coupons are secured. *Cameron* v. *Tome*, 24 Am. & Eng. R. R. Cases, 203; *Virginia* v. *Chesapeake & Ohio Canal Co.*, 32 Md., 501; *Harbeck* v. *Vanderbilt*, 20 New York, 398; 7 N. H., 100; 6 Johns. Ch. (N. Y.), 423. See also Beach on Corporations, Vol. II., Sec. 666.''

Sheldon, in his work on Subrogation, Sec. 243*a*, states the rule thus: ''Where matured coupons of secured bonds of a railroad, or other corporation, are taken up with money furnished, without the knowledge of the bondholders, by a third party, without any assent on the part of the bondholders that this transaction should be regarded as a purchase of the coupons, they will not afterwards, in the hands of such third party, be allowed to share in the security to the prejudice of the bondholders. If the coupons have been paid, on presentation at the place of payment, with the money of a third party, a private arrangement between him and the debtors that he should be regarded as the purchaser of the coupons will not be enforced against the bondholders. Such a voluntary act will be regarded as a payment, not as a purchase, unless so intended by all the parties. *Wood*

v. *Guarantee Trust Co.*, 128 U. S., 416; *Fidelity Co.* v. *West Penn. Railway Co.*, 138 Penn. St., 494.''

The case of *Ketchum* v. *Duncan*, 96 U. S., 659, relied on by counsel for complainants, bears very little resemblance to the case at bar. It was held by a majority of the Court that the facts of that case made out a purchase, and not an advance of money either to or for the benefit of the debtor corporation, and that the transaction did not amount to a payment of the coupons.

It distinctly appears in this record that Mr. Goad, as secretary and treasurer, advanced for the company the money with which these coupons were taken up, and held them, uncanceled, as security against the company for the money so advanced. It appears from the evidence of Mr. Goad that, when he called on the trustee bank and requested tnat the coupons might be held up until he could get some money from the stockholders with which to pay them, he was acting in his official capacity as secretary and treasurer of the company. When Henson, the president of the bank, stated to him that, if he desired an extension of the bonds, he had better raise the money to pay the interest without delay, Goad states that he then went and raised the money—''that is, I put my own money in, and told him that I would pay them out of my money, and he then turned the coupons over to me not stamped paid, and I held them against the company as security for my advance.''

Martin *v.* Bank.

We cannot doubt, in the light of this evidence, that, so far as the bondholders were concerned, this transaction amounted to a payment of the coupons and an extinguishment of the lien upon the mortgaged property. Goad, of course, had a right to hold the coupons against the company as security for the money advanced. Complainants, who acquired these coupons from Goad, will also be entitled to the same relief against the Arlington Land & Improvement Company, but will not be entitled to participate in the proceeds of the trust sale further than to receive the surplus on hand, amounting to forty-four dollars and sixty-five cents ($44.65).

The decree of the Chancellor in favor of complainants for the *pro rata* of said coupons in the net fund realized from the sale of the trust property after deducting the expenses and compensation charged by defendant, is reversed, but in all other respects affirmed.