FERREE v. NEW YORK SECURITY & TRUST CO. et al.

(Circuit Court of Appeals, Eighth Circuit. April 30, 1896.)

No. 694.

1. PROMISSORY NOTE—TRANSFER TO GUARANTOR—PAYMENT.

One D. executed a deed of trust of land in Missouri, in favor of the L. Investment Co., to secure two notes,—one for $2,000, due February 1, 1892, and one for $9,000, due February 1, 1894. Immediately thereafter the Investment Co. transferred the deed of trust and both notes to plaintiff, indorsing on the notes an agreement to guaranty the payment of the interest; to collect the principal at its own expense, and pay it over at maturity, if paid by the maker; and, if not so paid, to collect the same at its own expense, and pay it over, within two years, with interest until paid. The interest was paid to plaintiff, as it accrued, by the Investment Co., though the maker of the notes did not pay it. At the maturity of the $2,000 note, plaintiff presented it to the Investment Co., received the amount thereof, indorsed it, "Without recourse," and delivered it to the Investment Co. The maker of the note had not paid it to the Investment Co., but plaintiff was not informed of this, nor of the nonpayment of the interest by the maker. Thereafter the Investment Co. placed the note in the hands of certain trustees, appointed to hold securities which the Investment Co. had the right to change at pleasure, to secure debenture bonds of the Investment Co. The company continued to pay the interest on the $9,000 note until it became insolvent. Upon a foreclosure of the deed of trust, the mortgaged property having been sold for less than enough to pay both notes, and the holders of the $2,000 note claiming priority, under the law of Missouri, by which the first to mature of two notes so secured is preferred in payment, *held*, that the circumstances of the transfer of the note by plaintiff to the Investment Co. would not warrant the conclusion that it was intended as a sale of the note, but that the transaction must be regarded as a payment, and, accordingly, that the $2,000 note, in the hands of the Investment Co.'s transferees, was not entitled to priority.

2. SAME—RIGHTS OF HOLDER.

*Held,* further, that as the trustees had received the note after maturity, and under an agreement which enabled the Investment Co. to substitute it for other securities in their hands, without regard to their consent, their claim to priority could not be sustained on the ground that plaintiff's indorsement had enabled the Investment Co. to transfer it as an apparently existing obligation.

Appeal from the Circuit Court of the United States for the Western District of Missouri.

This was an intervening petition which was filed by the appellant, Leslie C. Ferree, in a case entitled New York Security & Trust Co. v. Lombard Inv. Co., which was pending, at the time the intervening complaint was filed, in the circuit court of the United States for the Western district of Missouri. The intervener, Leslie C. Ferree, was the holder of a note in the sum of $9,000, which was secured by a deed of trust on certain real estate situated in Kansas City, Mo. Another note, in the sum of $2,000, which was held by the appellees, was secured by the same deed of trust. A controversy arose between the holders of the two notes as to which was entitled to priority of payment out of the proceeds of the sale of the mortgaged property. To determine that controversy, the appellant filed an intervening petition, and the case was submitted to the lower court upon an agreed statement of facts. The material facts, as disclosed by the agreed statement, on which the decision of the case depends, are substantially these: George H. Donaldson and wife on February 1, 1889, executed a deed of trust to David H. Ettien, as trustee for the Lombard Investment Company, on certain property situated in Kansas City, Mo., to secure an indebtedness of $11,000, evidenced by two certain notes or real-estate bonds, which were executed by said Donaldson,—one for $2,000, due February 1, 1892, and one for $9,000, due February 1, 1894. On February 4, 1889, the Lombard Investment Company (hereafter termed the "Investment Company,") sold both of said notes or bonds to Daniel Bushnell, the intervener's intestate, and indorsed on the back of each of said notes an assignment in the following form, to wit: "For value received, the Lombard Investment Company hereby assigns this bond or note to Daniel Bushnell, of Pittsburg, Pennsylvania, or order, and agrees—First, to guaranty the payment of the coupons attached hereto at the maturity thereof; second, to collect at its own expense and to pay over the principal hereof at maturity, provided the same is paid by the maker; third, in event of default being made by the maker, to collect at its own expense and to pay over the principal hereof, within two years from the maturity of the same, and to pay interest thereon at the rate of six per cent. per annum, payable semiannually until the principal is paid." The investment company also assignd the mortgage or deed of trust securing the notes to said Bushnell, by a formal written assignment, which was duly recorded in the county where the mortgaged property was situated. Prior to February 1, 1892, when the note for $2,000 matured, Bushnell died. His administrator, Ferree, presented the note to the Investment Company, at its home office, in the city of Philadelphia, and received the amount due thereon from the investment company. When the administrator surrendered the note, on receiving the amount due thereon, he indorsed it, "Without recourse," and delivered it to the investment company. Subsequently, on February 15, 1892, the investment company placed the note for $2,000 in the hands of certain trustees who had been theretofore appointed to hold certain securities, consisting of notes and bonds, in trust and as collateral to secure the payment of certain debenture bonds that had theretofore been issued by the investment company, and that are still outstanding and unpaid. It was agreed by the parties that the investment company paid all the interest coupons attached to the two notes in controversy which matured previous to February 1, 1892, when the note for $2,000 became due; that it paid them over its counter in Philadelphia, where the note in controversy was also presented for payment, and that it thereafter paid the interest coupons on the note for $9,000 until the investment company became insolvent and passed into the hands of a receiver; but that it never informed the intervener, nor his intestate, when such coupons were paid, that the maker of the notes had defaulted in the payment of his interest. It was furthermore agreed that the intervener was not informed on February 4, 1892, when the note for $2,000 was taken up by the investment company, that the maker thereof had failed to provide the funds wherewith to pay it. When that note was taken up by the investment company, nothing was said by its agent or by the intervener relative to the subject of payment. The intervener still holds the note for $9,000, while the note for $2,000 remains in the hands of the trustees heretofore mentioned, and is held by them as collateral to secure

the payment of the aforesaid debenture bonds that are still outstanding and unpaid. The mortgaged property is not worth to exceed $9,750. The intervener has paid out a considerable sum of money for taxes and insurance on the mortgaged property since the investment company became insolvent. On the foregoing state of facts the circuit court decreed that the proceeds realized from the sale of the mortgaged property should be applied in the following manner: First, to pay the necessary costs of foreclosure; second, to refund the various sums of money advanced by the intervener to pay taxes and insurance; third, to pay the note for $2,000 held by the trustees; and, lastly, to the payment of the note for $9,000 now held by the intervener. 65 Fed. 271. The intervener has brought the case to this court on an appeal from such decree.

O. A. Lucas, for appellant.

Frank Hagerman (Edward C. Wright and Sandford B. Ladd with him on brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The decision of the present case hinges mainly, if not entirely, on the construction which shall be placed upon the acts of the parties when the note for $2,000 was surrendered by the intervener to the Lombard Investment Company, on February 4, 1892; and the question with respect to that transaction is briefly this: Did the intervener intend to sell and assign the note to the investment company, and to vest it with the right to participate in the proceeds of the sale of the mortgaged property according to Missouri laws, or did he intend that, as between himself and the investment company, the transaction should operate as a payment? We put the first clause of the interrogatory in this form because it is the established doctrine in Missouri that, where a mortgage or deed of trust is given to secure the payment of two or more notes of the same date, those which first mature are entitled to priority of payment out of the fund realized by a sale of the mortgaged property. Mitchell v. La Dew, 36 Mo. 526; Hurck v. Erskine, 45 Mo. 484; Thompson v. Field, 38 Mo. 320; Freeman v. Elliott, 48 Mo. App. 74. Therefore, if the first branch of the foregoing inquiry is answered in the affirmative, the note for $2,000 was entitled to be first paid, and the decree of the circuit court was unquestionably right.

We should have no difficulty in assenting to the decree rendered by the circuit court, if it appeared that when the note for $2,000 was indorsed, "Without recourse," and delivered to the investment company, the intervener was aware that the money to take up the note, as well as to take up the previously maturing interest coupons, had not been provided by the maker of the notes, and if it further appeared that no contract relations existed between the parties. In that event, inasmuch as the transaction between the intervener and the investment company could only be regarded as a sale or a payment of the note, it would perhaps be more reasonable to conclude, in view of the indorsement, and in view of the fact that nothing was said about payment, that a sale, rather than a payment, of the note was intended. But the supposed case is not before us for

decision. The intervener did not know that the maker of the note had defaulted in his previous interest payments; he was not advised that the money to take up the note at maturity was being advanced by the investment company; and contract relations did exist between the parties which bound the investment company to see that the note was eventually collected from the maker and paid in full to the intervener. The indorsement of the note, "Without recourse," when it was delivered to the investment company, is the only circumstance, so far as we can see, which furnishes a fair pretense for the contention that a sale of the paper was intended, and great stress is accordingly laid on that fact. It is said, in substance, that the indorsement of the note, without reference to other circumstances, indelibly stamps the transaction as a sale. We have not been able to concur in that view, because it either overlooks, or fails to give due weight to, the contractual relations existing between the parties when the note was indorsed and delivered to the transferee. It may be conceded that, if the indorsement was made at the request of the investment company,—as to which fact, however, the agreed statement is silent,—it was a circumstance from which the intervener might possibly have inferred that the money to take up the note was being advanced by the investment company. But it is at this point that the guaranty originally executed by the company becomes significant, and prevents us from·drawing the inference that the intervener intended to sell the note to the investment company, and to vest it with the right to demand payment of · the same out of ·the proceeds of the mortgage sale, to the exclusion of the note for $9,000 which the intervener then held. By the third clause of the guaranty the investment company had agreed to collect the note at its own expense, and to pay over the principal sum within two years from the maturity of the same, if it was not paid by the maker at maturity. In view of this guaranty, which bound the investment company to see that the note was collected and paid without cost to the intervener, what would be more natural than for the latter to infer, even though he was requested to indorse the note, that the guarantor intended to discharge its guaranty by paying the note? It is true that the contract existing between the parties gave the investment company two years within which to collect the note and to pay over the proceeds, but it was optional with it to make good its guaranty at any time within the two years; and no inference can fairly be drawn, from the fact that it took up the note as soon as it matured, that it intended to purchase the paper from the intervener as an investment, rather than to pay it. At all events, the intervener was not bound to infer that a purchase of the paper was intended. He had the right to suppose that, as between himself and the investment company, the note was paid and extinguished, and that it would not thereafter be interposed against him as an unpaid obligation. If we assume, then, that the intervener was requested to indorse the note, "Without recourse," and that he had some reason to suppose from such request that the maker had not provided the funds wherewith to pay it, still, in view of the circumstance that the investment company was bound to collect and to pay the note

without cost to the intervener, he had the right to presume, unless he was advised to the contrary, that it intended to discharge that obligation without delay.   By reason of the relations which existed between the parties at that time, this was both a natural and a reasonable presumption, upon which the intervener was entitled to act and to rely.   In our opinion, therefore, the facts disclosed by the agreed case do not warrant the conclusion that the intervener intended to sell the note, and thereby enable the transferee to participate, as against him, in the distribution of the proceeds of the mortgage sale.   If such a proposition had been made by the investment company to the intervener when it took up the note, we have no doubt that it would have been forthwith declined.   It is conceded that, when the note was presented to the investment company for payment, no express agreement to sell the same was made; and, in view of all the circumstances of the case, we think that an agreement of that nature cannot be implied.   The doctrine is well established that when a note is presented for payment at maturity by the owner thereof, and the amount due thereon is received, the transaction will not be regarded as a sale, unless both·parties so agree in express terms or by necessary intendment.   As the rule is sometimes expressed, the owner of such paper cannot be made a seller without his knowledge or consent.   Lancey v. Clark, 64 N. Y. 209, 212; Collins v. Adam's Ex'rs, 53 Vt. 433; Bank v. Lay, 80 Va. 436; Moran v. Abbey, 63 Cal. 56; Fidelity Insurance, Trust & Safe-Deposit Co. v. West Penn. & S. C. R. Co., 138 Pa. St. 494, 21 Atl. 21; Martin v. Trust Co. (Tenn. Sup.) 28 S. W. 1097.   And, in the absence of an express agreement to sell, it is always a question of intent whether, in a given case, the transaction amounted to a sale or to a payment.   Wood v. Safe-Deposit Co., 128 U. S. 416, 424, 9 Sup. Ct. 131.   We conclude, therefore, as above stated, that the only fact upon which the appellees do or can rely to establish a sale of the note in question, to wit, the fact that the intervener indorsed the paper when he delivered it to the investment company, is insufficient for that purpose, and that the transaction, as between those parties, must be regarded as a payment of the note, rather than as a sale.

It is further contended by the appellees that the note for $2,000, by them held in trust, is entitled to priority of payment, on the ground that the intervener, by indorsing the note when he delivered it to the investment company, thereby enabled the latter company to transfer it to the trustees of the debenture holders as an unpaid note.   The equitable rule is accordingly invoked, that, where one of two innocent persons must suffer for the fraud of a third party, the loss should fall on that one by whose neglect or default, if any, the fraud was rendered possible.   We perceive no just ground for the application of that principle to the case at bar.   Under its agreement with the debenture holders, the investment company had authority to withdraw any of the securities that might be in the hands of the trustees, at any time, and to deposit other securities in their place which it deemed of equal value.   The trustees appear to have had no right to select the securities, or to determine their

value, which were to be substituted in lieu of other securities that the investment company withdrew from the trust. That right, it seems, belonged exclusively to the investment company, and it was privileged to exercise it as it thought proper. Moreover, when the note for $2,000, now in question, was placed in the hands of the trustees for the debenture holders, in lieu of other securities that were at the time withdrawn, the board of trustees consisted of the president, vice president, and secretary of the investment company. Possibly this latter circumstance did not affect the trustees with knowledge that, as between the intervener and the investment company, the note was paid, and as to that point we do not deem it necessary to express an opinion. But the fact remains that the investment company had the right to determine what securities it would deposit with the trustees in lieu of other securities that had been withdrawn, and if it chose to assume the position that the deposit of the note for $2,000 with the trustees would vest the debenture holders with whatever rights it had as against the maker of the note, who had not paid it, it is not obvious that the trustees were so situated that they could rightfully object to the exchange. The debenture holders, therefore, are not in the position of persons who have voluntarily advanced money on the note in question in the belief that it was an existing lien on the mortgaged property, and as such entitled to priority of payment. On the contrary, the trustees appear to have acquired the note because they had previously armed the investment company with authority to exchange it for other securities in their hands, either with or without their consent. But a more conclusive reason why the rule invoked by the trustees cannot be applied is that they did not acquire the note until after it was overdue and dishonored. They took it with knowledge that it was subject to all equities and defenses which existed as between the original parties, and, as we think, with the full understanding that they could claim no greater rights, as against any one, by reason of the transfer to themselves, than the investment company then had. We are aware of the rule which has sometimes been enforced, that where the owner of nonnegotiable securities, which are nevertheless assignable, before their maturity, clothes another with all the indicia of a title thereto, and thereby enables him to sell the same to, or obtain money or credit thereon from, a third party, the latter will be allowed to retain and hold the same, even as against the true owner. International Bank v. German Bank, 71 Mo. 183, and cases there cited. But we are unwilling to extend that doctrine to the case at bar. The application of that rule to the facts of the present case would, in effect, require us to hold that when a person accepts payment of a negotiable note, at maturity, from one who is under an obligation to pay it, he is so far guilty of negligence, if he fails to have it marked or stamped "Paid," that it may be asserted against him, as an unpaid obligation, by any one who subsequently purchases it from the person who thus paid it, and to whom it was surrendered. It is very certain that none of the cases to which we have been referred go to that length. We think it is altogether the better view that one who purchases a note,

after maturity, from one who is obligated to pay it, like a surety or guarantor, can in no event claim any greater rights, as a holder of the paper, than the person from whom he acquired it. The result is that the decree of the circuit court must be, and it is hereby, reversed. The case is accordingly remanded to the circuit court, with directions to enter a decree in favor of the intervener, directing that the proceeds of the sale of the mortgaged property be appropriated—First, to paying the necessary costs of foreclosure, including the fees of the trustee; second, to paying the taxes and insurance upon the mortgaged property that have been advanced and paid by the intervener; and, lastly, to paying the note for $9,000 which is now held by the intervener.