## Annie Ball v. Annie Serum et al.

1. Decrees—*Must Correspond to the Allegations of the Bill.*—A decree which is contrary, both to the allegations of the bill and the evidence, can not be sustained.

2. Sales—*Necessary Elements.*—To constitute a valid sale there must be a concurrence of the parties competent to contract; mutual assent; a thing, the absolute or personal property in which is transferred from the seller to the buyer, and a price in money paid or promised.

Foreclosure of a Trust Deed.—Appeal from the Circuit Court of Cook County; the Hon. Edward F. Dunne, Judge, presiding. Heard in this court at the March term, 1899. Reversed and remanded, with directions. Opinion filed November 16, 1899.

F. L. Salisbury, attorney for appellant.

Sherman & Burtt, attorneys for appellees.

Mr. Justice Adams delivered the opinion of the court.

This is an appeal from a decree rendered in a suit for the foreclosure of a trust deed, in which appellant was complainant and Andrew Peterson, trustee, George P. Bay, successor in trust, Annie Serum, Helena Serum, Martin H. Serum and others, defendants.

The trust deed was executed by Andrew H. Serum and Annie Serum, his wife, December 5, 1891, of certain premises therein described, to secure the payment of a promissory note of the same date, for the sum of $5,000, with interest at six and one-half per cent per annum, payable semi-annually at the banking house of Peterson & Bay, in Chicago, made by Andrew H. Serum, payable to his order and by him indorsed. The semi-annual installments of interest were evidenced by ten interest notes for $162.50 each, with interest at seven per cent per annum after maturity, payable at said banking house, made by Andrew H. Serum, payable to his order and indorsed by him. The default alleged in the bill is the non-payment of the interest note which fell due June 5, 1896, and the non-payment of taxes

and insurance. By amendment to the bill, the Western State Bank and others were made defendants. Andrew Peterson, trustee, George P. Bay, successor in trust, the Western State Bank and Peterson & Bay, personally, answered the bill, averring that the principal note above mentioned was made by Andrew H. Serum, in consideration of a loan to him by Andrew Peterson and George P. Bay, who were partners as Peterson & Bay, and that the trust deed above mentioned was made to secure the same and the interest notes; that the principal note and interest notes were sold by Peterson & Bay to the complainant, and that the first six interest notes were paid to her; that, June 6, 1895, complainant sold to Peterson & Bay interest note number 7, and, July 1, 1895, Peterson & Bay sold all their interest in the banking business, including interest note number 7, to the Western State Bank, and that said interest note is now the property of said bank; that, December 14, 1895, complainant sold to the Western State Bank interest note number 8, which is now the property of said bank; that Andrew Peterson, trustee, to protect the interest of Andrew Peterson, August 19, 1895, paid $101.14 taxes; that October 8, 1895, said premises were sold for taxes, and October 21, 1895, Andrew Peterson purchased the certificate of sale by paying therefor $79.96, and August 19, 1896, said Peterson was compelled to pay the further sum of $88.14 to protect said security, and that said three payments of taxes were made by said Andrew Peterson, trustee, at the request and solicitation of complainant, etc. The same parties who made the foregoing answer filed a cross-bill containing substantially the same allegations as the answer, and claiming that the lien of Western State Bank and Andrew Peterson are superior to the lien of appellant, and praying that they be decreed to be a first lien, etc. Complainant answered the cross-bill, denying the alleged sale to Peterson & Bay of interest note number 7, and the alleged sale to the Western State Bank of interest note number 8, and averring that about June 6, 1895, interest note number 7 was paid to her at the office of Peterson &

Bay, where it was payable, and where all prior interest notes had been paid, and that, about December 14, 1895, she presented interest note 8 at the office of the Western State Bank, successor to Peterson & Bay, said office being the same formerly occupied by Peterson & Bay, and that the same was there paid. Complainant, in her answer to cross-bill, also denies that any taxes were paid by Andrew Peterson, trustee, at her request or solicitation. It is unnecessary to refer to the pleadings of other parties or the proceedings in respect to them, as the sole contest here is between appellant and the Western State Bank.

Issue was made up on the bill, cross-bill and answers mentioned, and the cause was referred to a master to take proofs and report his conclusions and opinion of law and evidence. The master reported that the amount due to appellant should be decreed to be a first lien, and the amount due the Western State Bank, on account of interest notes 7 and 8 and taxes paid on premises, should be decreed to be a second lien. The court decreed a sale of the premises described in the trust deed, the payment of certain costs from the proceeds, and thereafter as follows :

" First. To the Western State Bank the amount due it under this decree for taxes paid by it, and which is hereinbefore decreed to be a first lien on said premises.

" Second. If the balance then remaining in his hands shall be sufficient, he shall pay to the complainant, Annie Ball, and the Western State Bank, the amounts due them, respectively, under this decree, and hereinbefore decreed to be second lien on said premises. If insufficient, he shall distribute said balance between said complainant, Annie Ball, and the Western State Bank *pro rata*, as far as the same will reach."

The court found, in its decree, that there was due the Western State Bank, for taxes paid by it, $400.59, and on account of interest notes 7 and 8, $386.81.

Two questions are presented for decision : First, whether the court erred in decreeing a lien in favor of the Western State Bank for the taxes alleged to have been paid; and, second, whether the court erred in decreeing a first lien in

favor of said bank for the amount due on interest notes 7 and 8. It is alleged, both in the answer and cross-bill of the Western State Bank and others, that Andrew Peterson, trustee, paid the taxes, and the evidence corresponds with the allegation. Lawrence Nelson, a witness on behalf of cross-complainants, testified that he had been cashier of the Western State Bank since July 1, 1895, when the bank succeeded to the banking business of Peterson & Bay, and that before that time he had been cashier for Peterson & Bay for ten years. In respect to the taxes for the years 1894, 1895 and 1896, being all the taxes mentioned in the answer and cross-bill of the Western State Bank and others, this witness, in his examination in chief, testified positively that the taxes were paid by Andrew Peterson, trustee. A certificate of sale for the taxes of 1894, assigned by the purchaser, a certificate of redemption from sale for the taxes of 1895, issued to Andrew Peterson, trustee, and a receipt running to Andrew Peterson, trustee, for the taxes of 1896, were identified by the witness and put in evidence, and he testified that the money paid on the assignment of the certificate of sale, the redemption certificate, and the receipt, was all paid by Andrew Peterson, trustee, and that the assigned certificate of sale and the redemption certificate are the property of Andrew Peterson, trustee. The witness, on his cross-examination, testified that the money paid as above stated by Andrew Peterson, trustee, was the money of the Western State Bank. The matter then stands thus : The Western State Bank, both in its answer and cross-bill, avers that the taxes were paid by Andrew Peterson, trustee. In the cross-bill it is averred " that by the terms of said trust deed, the amount advanced by said Andrew Peterson, trustee, should be allowed to him as a first lien upon the mortgaged premises," etc. The proof shows that the money paid on account of taxes was paid by Andrew Peterson, trustee, and appellee's counsel, in their argument, quote extracts from the trust deed which they claim justified the trustee in paying taxes and redeeming from tax sales, showing that their theory corresponds with the allegations of

the cross-bill and the evidence, namely, that the payments were made by Peterson, as trustee. The decree, in finding that the Western State Bank paid the taxes and decreeing a lien in favor of it for the taxes, is erroneous. It is contrary both to the allegations of the cross-bill and the evidence, and can not be sustained. Parkhurst v. Race, 100 Ill. 558; Gorham v. Farson, 119 Ib. 425.

If, as Nelson testified, Peterson used the bank's money in paying the taxes, the bank must look to Peterson, or if he is deceased, as has been suggested in this court, to his estate.

The facts in regard to interest notes 7 and 8 are as follows: June 30, 1892, appellant became the owner by purchase from Peterson & Bay of the principal note and all the interest notes hereinbefore described, which notes were payable, as heretofore stated, at the banking house of Peterson & Bay. The first six interest notes were presented at the banking house of Peterson & Bay and were there paid. Mary Parkinson testified that she presented for appellant interest notes 7 and 8, and that Mr. Nelson, the cashier, gave her a check for them. The amount of the check given when interest note 8 was presented was for the amount due on note 8, and also on another interest note presented by Miss Parkinson with interest note 8, and which is not involved in this case. It does not appear that anything was said when interest notes 7 and 8 were paid. Miss Parkinson says there was no conversation when number 8 was paid, and Nelson says he remembers none when either 7 or 8 was paid.

Interest note 9 fell due June 5, 1896, and was presented at the Western State Bank for payment about June 9, 1896, when she was informed there was no money to pay it, and also that interest notes 7 and 8 had not been paid by the maker. Nelson testified that after June 9, 1896, he asked appellant to pay interest notes 7 and 8, and that this was the first time she had been requested to pay them. Appellant had not been notified, prior to the presentation of interest note 9 for payment, that the maker of the notes

had not paid notes 7 and 8.   Andrew Peterson was president of the Western State Bank when that bank succeeded to the business of Peterson & Bay, and thereafter.

Interest note 7 was paid at the banking house of Peterson & Bay before the Western State Bank succeeded to their business.   Interest note 8 was paid after the Western State Bank had succeeded to the business of Peterson & Bay.   It was paid at the office of the last named bank (which was formerly the office of Peterson & Bay) by the check on said bank of Lawrence Nelson, cashier, and Nelson was authorized to give the check by Andrew Peterson, trustee, who was then the president of the Western State Bank.   Miss Parkinson, who presented appellant's interest notes for payment, says that she always did business at the bank with Mr. Nelson, cashier.   Nelson testified that when interest notes were presented at the bank they paid them, whether the money had been collected from the maker or not; that if the money had been collected, they canceled the notes, and if the money had not been collected, they did not cancel them, but held them as assets of the bank.   The evidence shows, however, that appellant had no knowledge of this mode of doing business, if such was the mode.   Interest notes 7 and 8 were put in evidence by the Western State Bank, and are uncanceled.

It is now claimed by counsel for the Western State Bank that interest note 7 was sold to Peterson & Bay, and interest note 8 to the Western State Bank, by appellant.

"To constitute a valid sale, there must be a concurrence of the following elements, viz.: 1st, parties competent to contract; 2d, mutual assent; 3d, a thing, the absolute or general property in which is transferred from the seller to the buyer; and, 4th, a price in money paid or promised."   Benjamin on Sales, Sec. 1;  Butler v. Thompson et al., 93 U. S. 412, 414–15.

In the last case the court say :

"The essential idea of a sale is that of agreement or meeting of minds, by which a title passes from one and vests in another."   Parsons says:   "All that is necessary is, that the parties should intend, the one to part with his

property, the other to become the owner of it. The union of intention constitutes the contract of sale."

In the present case it is conceded that there was no express contract of sale, and the evidence is that nothing was said at the times the interest notes were presented and paid; but counsel for the Western State Bank contend that a contract of sale may be inferred from the circumstances. How can the intention of appellant to sell (which intention is an essential element of a contract of sale) be inferred? Certainly not from the previous course of dealing between the parties. The interest notes were payable at the banking house of Peterson & Bay; she had presented six of them after maturity at that banking house, and they were then paid by the delivery to appellant of checks by the cashier. Interest note 7 was paid in like manner while Peterson & Bay were still in business, and interest note 8 was paid by the same cashier, at the same place, by check on the Western State Bank, drawn by authority of Peterson, the trustee, who was then the president of that bank. There was absolutely nothing from which appellant could infer that notes 7 and 8 were not paid as the six prior notes had been, or that the maker of the notes had not deposited with Peterson & Bay the money with which to pay them, and it is a significant circumstance that not until long afterward, when interest note 9 was presented for payment, was it intimated to appellant that notes 7 and 8 had not been paid by the maker, thus delaying appellant in instituting foreclosure proceedings for at least half a year. Peterson & Bay must have known when note 7 was paid, and Peterson when note 8 was paid, that appellant understood that she was receiving payment of the notes, not selling them. The notes were paid in full, after maturity; they were not discounted. It is certainly an unusual, if not unprecedented circumstance, for a bank to purchase overdue paper, paying therefor its full face value. We are of opinion that appellant did not sell notes 7 and 8, or either of them.

Counsel for the bank rely on Ketchum v. Duncan, 96 U. S. 659, and Miller v. R. & W. R. R. Co., 40 Vt. 399. In the

former case it appears from the opinion of the court that the facts were essentially different from the facts in the present case. The court say :

" The coupons were not paid in the usual manner, or at the usual place, or by the persons accustomed to pay them. Before May, 1874, the coupon paid at Mobile had always been paid at the office of the company by its officers, and had been left there. They had been paid, it is true, by checks drawn on the bank of Mobile; but the holders had received those checks only on the delivery of the coupon to the company. In regard to the May and November coupons of 1874 this usage was changed. The coupons were not left at the company's office. They were taken there for verification, and then returned to the holders, with directions to take them to the bank, where they would be paid; but no checks drawn upon the bank were given to the holders. Some of them knew the company was not paying those coupons. Others inquired, and were told the bank would purchase. Others did not know the company would not pay, and they made no inquiry," etc.

The opinion, too, was by a divided court, four of the judges holding that there was no sale of the coupons. After a careful reading of the opinion in the Vermont case, we do not think it applicable to the facts in this case. In the Vermont case, the court say :

" A court of equity will not convert a payment into a purchase in favor of a party advancing the money, when there is a superior countervailing equity in another party."

The following authorities are opposed to the contention of counsel for the bank : Union Trust Co. v. Monticello & P. J. R. Co., 63 N. Y. 311; Farmers L. & T. Co. v. Iowa Water Co., 78 Fed. Rep. 881; Fidelity Co. v. R. Co., 138 Pa. St. 494; Collins v. Adams' Ex'rs, 53 Vt. 433; Pearce v. Bryant Coal Co., 121 Ill. 590, 597. See also Martin v. Bank, 94 Tenn. 176.

Nelson testified that the taxes were paid at the request of appellant, and appellant, while denying this, expressed a willingness to pay the taxes. We are of opinion, therefore, that the taxes should be declared a first lien in favor of the person paying them, who, so far as appears from the record

before us, was Andrew Peterson, trustee. Since the appeal was perfected it has been suggested in this court that Andrew Peterson departed this life January 19, 1899, but his personal representative, if any, has not been made a party to this appeal. If it shall appear in future proceedings in the Circuit Court that the money to pay interest notes 7 and 8 was furnished by the Western State Bank, and that the bank has not been repaid, we think it equitable, no one here objecting thereto, that, if there shall be any surplus of the proceeds of the sale of the mortgaged premises, after paying, first, the taxes, and second, the amount due to appellant, that such surplus should be applied to the payment of interest notes 7 and 8. The decree will be reversed and remanded, with directions to proceed in accordance with this opinion. All costs of this appeal are to be paid by the Western State Bank, appellee.

Reversed and remanded, with directions.