FRANCES R. WHITE, Appellee, v. F. E. GUTSHALL et al., Appellees; CENTRAL NATIONAL BANK & TRUST COMPANY et al., Appellants.

CENTRAL NATIONAL BANK & TRUST COMPANY et al., Appellants, v. MILDRED GUTSHALL et al., Appellees.

No. 40823.

November 17, 1931.

George Harnagel, for Frances R. White, appellee.

Wm. M. Wilcoxen, for Security Loan & Investment Company, appellee.

Parrish, Cohen, Guthrie & Watters, for Central National Bank & Trust Co., James Parker, and David Whitson, Trustees of the D. G. Edmundson Estate, Interveners, appellants.

 Albert, J.—On and prior to the 21st day of July, 1925, Mildred and F. E. Gutshall were the owners of certain real estate situated in the city of Des Moines, and on that day they executed and delivered to the Security Loan & Investment Company nine promissory notes for $100 each. These notes bore various maturity dates commencing with August 1, 1926, the last of said notes bearing due date February 1, 1930. In addition thereto were two promissory notes, one for $300 and the other for $2,500.00, each due August 1, 1930. To secure the payment of these notes, the Gutshalls executed and delivered to the Security Loan & Investment Company a certain mortgage of even date with said notes covering the property above referred to, which mortgage was duly recorded on July 24, 1925.

The first $100 note of the series has been paid, and is, therefore, not involved in this action.

On the 15th day of August, 1925, Frances R. White, plaintiff, purchased from the Security Loan & Investment Company the last two notes of the series, to wit, the $300 and the $2,500.00 note, and on that date a written assignment was made to her of said notes by the Security Loan & Investment Company, and on the same date the said Investment Company duly assigned and delivered to Frances R. White the mortgage above referred to.

On August 20, 1925, the Security Loan & Investment Company, in writing, assigned all of the $100 notes to the D. G. Edmundson estate without recourse, and as collateral security. It appears that the Security Loan & Investment Company was indebted to the Edmundson estate, and that indebtedness was secured by collateral, and certain parts of the collateral held by the D. G. Edmundson estate were taken down and these notes substituted therefor. At the time of this latter transaction, W. H. Barnard, J. H. Fowler and James Parker were trustees of the Edmundson estate. These three men were respectively at the same time president, vice-president, and secretary, of the Security Loan & Investment Company and were such officers during all of the time in controversy herein. Later these three men were succeeded as trustees by the Central National Bank & Trust Company, James Parker and David Whitson, and later the Security Loan & Investment Company was declared insolvent and Wm. M. Wilcoxen was appointed receiver therefor.

On February 21, 1929, the plaintiff, Frances R. White, filed her petition in equity to foreclose said mortgage securing her two said notes, making F. E. Gutshall and wife, Polk County, Iowa, and T. L. Van, defendants. The trustees of the Edmundson estate thereupon filed a petition of intervention in which they alleged the ownership of the nine $100 notes, alleging the priority of due date, and that all claims of plaintiff and defendant were junior and inferior to the rights of the interveners, and asking that the mortgage be foreclosed; and therein they made Gutshall and wife, Frances R. White, T. L. Van and Wm. M. Wilcoxen, receiver of the Security Loan & Investment Company, defendants.

On March 7, 1929, the trustees of the Edmundson estate independently filed a petition asking foreclosure of the mortgage, and that the rights of all other parties be decreed junior

and inferior to the rights of said trustees. Several answers and cross-petitions were filed by the various parties, replies were also filed, and the pleadings cover some 34 pages of the abstract. Sufficient, however, has been set out to show the issues between the parties. The decree in the lower court held that the rights of Frances R. White were superior to the rights of the trustees of the Edmundson estate and entered a decree accordingly; hence this appeal.

Simply stated, Frances R. White held two promissory notes, the maturity date of both being August 1, 1930. These notes were assigned to her, together with the mortgage accompanying the same, on the 14th day of August, 1925. The trustees of the Edmundson estate held eight notes, each of which bore a prior maturity date to either of these held by Frances R. White; but these eight notes were transferred by assignment to the Edmundson estate on the 20th day of August, 1925, or six days after the White notes were transferred to her. None of the assignments of notes or mortgage was made of record. The controlling question in the case therefore is whether the rights acquired by Frances R. White, under the assignment of these notes and mortgage, are superior or inferior to the rights of the trustees of the Edmundson estate.

It is settled law in this state that where a mortgage is given to secure a series of notes, which notes become due at different dates, and the notes are disposed of to different parties, those holding the earlier maturity date have priority in the absence of an agreement otherwise. Whitney v. Eichner, 204 Iowa 1178, where the authorities are collated.

The plaintiff introduced evidence, which is undisputed, that when she purchased these notes from the Security Loan & Investment Co. there was an oral agreement that although her notes bore later maturity dates, she should have a first lien on the property as against the nine $100 notes. That such agreement is binding as between the parties see Squire Co. v. Hedges, 200 Iowa, 877; 41 C. J. 507, sec. 442; and is binding on an assignee. Ibid. Such agreement between mortgagee and assignee is valid. 41 C. J. 508.

But the evidence on this proposition was objected to on the ground that it was an attempt, by parol, to vary, change

or contradict the terms of a written contract, and this gives rise to the first question before us.

No one will dispute the proposition that if this oral contract did exist and the trustees of the Edmundson estate, at the time they took the nine promissory notes, knew of the existence of such agreement, the agreement would be binding and effective as against them, and would give the plaintiff, Frances R. White, a superior right. Therefore the plaintiff to effectuate her contention must prove two things: first, that such agreement did exist; and second, that the trustees of the Edmundson estate knew of the existence of the agreement at the time they took the notes.

As to the matter of the introduction of evidence, in order to make effective this contention, we know of no rule of law which would prevent the plaintiff from making proof of this oral agreement. Of course the oral agreement, when proven, is of no effect against the trustees of the Edmundson estate unless, in addition thereto, the plaintiff is able to prove knowledge thereof on the part of the trustees of said estate. The case of Isett & Brewster v. Lucas, cited by appellants, 17 Iowa 503, is in no way controlling here.

The crucial question in the case however is whether or not the trustees of the Edmundson estate knew, at the time they took these promissory notes, that the alleged oral agreement was in existence. To put this phase of the case concretely, the three parties named were the officers of the Security Loan & Investment Company, and at the same time trustees of the Edmundson estate, and this condition existed at the time Frances R. White purchased her notes, and also at the time the nine notes were collateraled to the trustees of the Edmundson estate. Of course it cannot be doubted that the Security Loan & Investment Company knew of the oral agreement made with Frances R. White relative to these notes, because the transaction was had between her and one of the officers of the corporation, and the knowledge of the officer is the knowledge of the corporation. In other words, the knowledge of the agent of this corporation is imputed to the corporation itself. We therefore start with the proposition that the Security Loan & Investment Company knew of this outstanding agreement with Frances R. White as to the priority of the notes which she purchased. The corporation

then collateraled these nine notes to the trustees of the Edmundson estate, one of whom (Barnard) was the president of the Security Loan & Investment Company, and the person who, in behalf of such company, had the transaction and made the agreement with Frances R. White. As such officer of the corporation he had this knowledge, and since he acquired the same as an officer of the Security Loan & Investment Company, is that knowledge, in law, imputed to him or binding upon him as a trustee of the Edmundson estate?

Barnard, who had this transaction with Frances R. White, of course knew at all times thereafter what the agreement was with her as to the priority of the notes which she purchased. When he, as one of the trustees, then accepted the nine other notes as collateral in the Edmundson estate, he had this knowledge and it was binding on the trustees as such. We have lately had occasion to pass upon this question in the case of In re Aasheim's Guardianship, 212 Iowa 1300. In that case Olson was guardian, and used $1100 of guardianship funds to pay interest on a mortgage against his individual property. He signed an individual demand note therefor payable to one of his wards. He thereafter trusteed all of his property to John Cunningham to pay certain scheduled debts, in which list he did not include this $1100 guardianship fund. Under the trust deed the possession of the property was left in Olson, and out of the same he sold corn and paid back to the guardianship fund the $1100 formerly diverted. In relation to this transaction we said:

"The proceeds of the property in Olson's hands did not belong to him individually. They were trust funds. He, in effect, without authority transferred them from one trust to another. * * * Olson knew that these identical funds belonged to his creditors, or to Cunningham in trust for them. Olson as guardian is not in the position of having received in good faith, without notice of the real ownership, funds belonging to another but not earmarked. He can not claim ignorance as guardian of facts that he was perfectly acquainted with at the very moment that he was undertaking to act as guardian. * * * On the record here the $1,140 in controversy must be held to be trust funds belonging to claimant Cunningham as trustee wrongfully commingled with and still in the funds held by Olson as

guardian. The decree for its payment by the guardian out of the guardianship property to the claimant, John Cunningham, as trustee must, therefore, be sustained.''

The point in this opinion with which we are interested is the holding that Olson, as guardian, was not in a position of having received in good faith, without notice of the real ownership, funds belonging to another but not earmarked. This holding is based upon the proposition that when Olson attempted to act as guardian, the knowledge that he possessed relative to the matter in hand was binding upon him as such guardian.

So in the case at bar we conclude that the knowledge that Barnard had of the agreement with Frances R. White that the White notes were to have priority was binding upon him as trustee when he dealt with the bank relative to the nine notes which by agreement were substituted as collateral.

It follows, therefore, that the trustees in taking these nine notes knew of the outstanding agreement with Frances R. White that her notes should have priority, and they are bound by the knowledge of such agreement. This being true, it necessarily follows that the Frances R. White notes take priority over those held by the Edmundson estate.

The appellants quote from and rely upon largely, as supporting their contention in this case, New York Security & Trust Co. v. Lombard Investment Co., 65 Fed. 271 at 278. The trouble with relying on this case as authority lies in the fact that the Circuit Court of Appeals reversed this case in 74 Fed. 769.

They also cite Watt v. German Savings Bank, 183 Iowa 346. The extent of the rule in that case is that a bank is held to know and remember what its directors learn while acting as such.

They also cite Caffee v. Berkley, 141 Iowa 344. The holding in that case is that knowledge of fraud, incidentally acquired by an officer of a corporation when not acting in an official capacity, is not notice to the corporation.

We find nothing in these cases that contravenes the rule laid down in the Aasheim Guardianship case above cited.

The district court rightfully reached the same conclusion as does this court.—Affirmed.

FAVILLE, C. J., STEVENS, DE GRAFF, and WAGNER, JJ., concur.